**In re KILAUEA VOLCANO HOUSE, LTD., Debtor.**

**Bankruptcy No. 82–00181.**

United States Bankruptcy Court,
D. Hawaii.

June 21, 1983.

Raymond Iwamoto, Ivan Lui-Kwan, Honolulu, Hawaii, for Kilauea Volcano House, Ltd.

Barton Watson, Honolulu, Hawaii, for Creditors' Committee.

James Sattler, Honolulu, Hawaii, for Stockholder-creditors.

Don Gelber, Honolulu, Hawaii, for Rampac, THI & C. Brewer (creditors).

## AMENDED MEMORANDUM DECISION

JON J. CHINEN, Bankruptcy Judge.

On January 20, 1983, Richard Barclay, Shurl Curci, John Curci, Steven Barclay, Mike Hollander and Victor Zaccaglin, hereafter "Movants", who claim to be stockholders-creditors of Kilauea Volcano House, Ltd., filed a Motion to Alter or Amend Order approving Kilauea Volcano House, Ltd., Compromise of Controversy (As Compromise Relates to Creditor Claims of Debtor's Stockholders, Promised Plan of Reorganization to Be Proposed and Curci Guaranty Thereof), which Order had been filed on January 11, 1983.

Movants contend that the Order should be amended to show that Movants' Schedule A–3 claim of $7,820,564 is "valid, subsisting and enforceable" and not subject to any subordination action on the part of the Unsecured Creditors' Committee.

Movants further contend that the compromise did not in any way discuss Movants' Schedule A–2 claim for $2,370,000 and disallowance of said amount was beyond the scope of the compromise.

The Debtor and Debtor-in-Possession joined in the Motion of Movants.

A hearing was held on May 5, 1983 at which James M. Sattler, Esq. represented Movants, Arnold I. Quittner, Esq., represented Debtor and Debtor-In-Possession, Barton Marshall Watson, Esq., represented the Unsecured Creditors' Committee and Don J. Gelber, Esq., represented Rampac, THI and C. Brewer.

Based upon the Memoranda filed, the record herein and arguments of counsel, the Court finds as follows:

Pertinent parts of the Joint Application of Debtor and of Secured Lenders To Compromise Controversy filed on August 11, 1982 read as follows:

6.... The stockholder guarantors have consented to the foregoing modification of the prior full release of the guarantees in order to provide a 12½% cash dividend on confirmation of the KVH reorganization plan to the general unsecured creditors; that consent is conditioned upon acceptance by creditors and confirmation by final order of a 12½% cash plan. Stockholder claims against KVH, more particularly described in the Schedule A–3, in the principal amount of $5,320,-564 as at December 31, 1981, shall be valid, subsisting and enforceable claims against KVH, but shall be subordinated to the claims of all other general unsecured creditors provided a 12½% cash plan is accepted and confirmed by final order of the court.

At the hearing held on August 11, 1982, commencing at 8:35 a.m. Mr. Arnold Quittner, in explaining a portion of the compromise stated:

"... As part of this package, the stockholders receive back from the secured lenders, who are being satisfied in other ways, the $2,500,000.00 note. So that the stockholders will have debt owing from KVH of approximately five million three plus two million five, or $7,800,000. This is a larger figure than I spoke to Barton about last night." (page 6 of partial transcript).

"The stockholders, whose claims are $7,800,000, would, pursuant to the plan, subordinate their claims to the unsecured creditor in order to enable them to receive the 12½ percent cash." (page 11 of partial transcript)

After Mr. Quittner briefly explained the gist of the compromise, Mr. Gelber and Mr. Watson requested a recess so that they may study the application which had been handed to them shortly prior to the hearing. The Court granted a short recess.

Upon reconvening, both Mr. Watson, attorney for the Unsecured Creditors' Committee, and Mr. Gary Lee, a member of said committee, acknowledged that, if Debtor were converted to Chapter 7 and liquidated, the unsecured creditors might not receive anything. Thus, their chief concern was a guarantee that the unsecured creditors would receive 12½% on the dollar.

Mr. Lee expressed the concern of the committee when he stated at the hearing: (page 11 of partial transcript)

"What the unsecured creditors are looking at is—granted, on a liquidation, the unsecured creditors may not get anything and it really depends, I guess, on the fight of Kilauea Volcano House and whether the secured lenders do have a security position in that property. But, under this compromise, what we were told earlier was there was going to be another payment plan but there was going to be a guarantee. Now we're being told we're given this 12½-percent cash plan but now we're being told there's no guarantee. In other words, what the unsecured creditors are looking at is there will be a plan, approve this compromise, but there's no guarantee you're going to get any money when the plan is confirmed. Because, if we take the $150,-000, it's $75,000 and $75,000. It's already been stated in court that the priority claims may exceed or be about $100,000. If that is so and if there are other claims that come before the unsecured creditors, that $150,000, as far as going to the unsecured creditors, may be zero. The only other money that this compromise talks about coming to KVH is another $150,-000, I think it's over four or five years. Now, I don't see, just based on this plan, how there can be a guarantee—if there's a guarantee of the 12½ percent to the unsecured creditors cash, which this thing—it doesn't say guarantee but it alludes to 12½-percent cash plan. If there's a problem. But, if there is no guarantee, then we stand in a position, even under this compromise, unsecured creditors may get zero and yet everybody else is getting something. Under liquidation, again, unsecured creditors may end

up with zero but at least we've got a shot at something. That's the quandry we're in and that's the reason for our position.

Following Mr. Lee's statement, Mr. Curci guaranteed that, if the plan to be proposed by Debtor were confirmed, he would personally guarantee the 12½% payment to the unsecured creditors.

After Mr. Curci gave his personal guarantee, Mr. Watson, on behalf of the Unsecured Creditors' Committee, recommended that the compromise be approved.

The Court then approved the compromise, subject to approval by one of Mr. Gelber's clients who was then travelling on the mainland. This approval was subsequently received.

At the hearing on May 5, 1983, Mr. Watson acknowledged that he had received a copy of the application to compromise controversy prior to the hearing on August 11, 1982. Although the period was extremely short, he had an opportunity to read the application to compromise controversy. If he lacked sufficient time to review the proposed compromise, Mr. Watson could have objected to the hearing scheduled for August 11, 1982. However neither Mr. Watson nor Mr. Lee, a member of the Unsecured Creditors' Committee, objected to the hearing.

Though the matter of waiver of subordination of stockholders' claim was never discussed among counsel for the various parties at the various conferences or at the hearing, the application to compromise controversy clearly stated:

"Stockholder claims against KVH, more particularly described in the Schedule A–3, in the principal amount of $5,320,564 as at December 31, 1981, shall be valid, subsisting and enforceable claims against KVH, but shall be subordinated to the claims of all other general unsecured creditors provided a 12½% cash plan is accepted and confirmed by final order of the court."

■ When the Unsecured Creditors' Committee approved the application to compromise controversy, it recognized the validity of the stockholders' claim of $7,800,000 and its subordination to the claims of the unsecured creditors, provided a 12½% cash plan was accepted and confirmed. In return for such recognition by the Creditors' Committee, the stockholders agreed to subordinate their claim if a 12½% cash plan was confirmed, and Mr. Shurl Curci guaranteed payment of the 12½% cash upon final confirmation of a plan. The Creditors' Committee cannot now seek to subordinate the stockholders' claim beyond the terms of this agreement, since it had agreed to accept a 12½% cash payment guaranteed by a stockholder, in return for its recognition of the stockholders' claim to $7,800,000 against KVH.

■ With reference to the Movants' claim for an additional sum of $2,500,000, some of them claim that they were not given notice of the August 11, 1982 hearing and were not represented at said hearing. Though Mr. Shurl Curci was present at the hearing, he contends that he represented himself and no one else.

At the hearing on August 11, 1982, Mr. Quittner stated:

" . . . As part of this package, the stockholders receive back from the secured lenders, who are being satisfied in other ways, the $2,500,000.00 note. So that the stockholders will have debt owing from KVH of approximately five million three plus two million five, or $7,800,000. This is a larger figure than I spoke to Barton about last night." (page 6 of partial transcript).

When this representation was made, Mr. Curci was present in Court, but he did not object to such statement.

The Unsecured Creditors' Committee recommended approval of the application to compromise controversy based on its understanding that the stockholders' claim against KVH was limited to a total of $7,800,000.00 and the guarantee by Curci that the unsecured creditors would receive a 12½% cash return upon confirmation by the Court of a plan to be submitted by Debtor as discussed at the hearing on Au-

gust 11, 1982. Without the committee's recommendation for approval, the application to compromise controversy would probably not have been approved on August 11, 1982, for the compromise involved assets to which the unsecured creditors had a possible claim.

When Mr. Quittner made the remarks concerning the $7,800,000.00 claim of the stockholders against KVH, it was the responsibility of Mr. Quittner and Mr. Curci to make it clear to all present at the hearing that the $7,800,000.00 was only a portion of the stockholders' claim. This was not done, and any fault for misleading the Court and the unsecured creditors, though it may be unintentional, is on the part of Mr. Quittner who made the remarks concerning the $7,800,000.00 with the tacit consent of Mr. Curci.

The clear impression given to the Court was that the stockholders were claiming a total of $7,800,000 against KVH and no more. Apparently, this was also the impression given to the Unsecured Creditors' Committee. This impression was based upon Mr. Quittner's argument and statements in Court where he spoke as though he represented the stockholders, even though he stated he did not represent Mr. Curci or the stockholders.

Subsequent to the hearing held on August 11, 1982, an Order Approving Kilauea Volcano House, Ltd., Compromise of Controversy (Transfer of Hotel Properties) was filed on November 9, 1982. Said Order dealt with a portion of the compromise heard on August 11, 1982, and was approved as to form by Shurl Curci "on his own behalf and on behalf of all other KVH Shareholders."

By this approval of the Order filed on November 9, 1982, the Court finds that Movants have approved the entire compromise of controversy as presented to the Court on August 11, 1982. Movants cannot approve only a portion of the compromise. They must approve the entire compromise or not at all.

The Court finds that the compromise agreement, though not perfect, is to the best interest of all concerned. Thus, the Court reaffirms its approval of the application to compromise controversy.

As for the Motion To Amend, the Court rules as follows:

1. The Unsecured Creditors' Committee, in return for a guarantee of a 12½% cash payment upon confirmation of a plan to be filed by Debtor as discussed at the August 11, 1982 hearing, recognized that the stockholders' claim of approximately $7,800,000.00 against KVH, "shall be valid, subsisting and enforceable". Thus, the Unsecured Creditors' Committee cannot now seek to subordinate the stockholder's claim to those of the general unsecured creditors.

2. Movants' contention that they were not represented at the hearing is without merit. They knew of the hearing and they allowed Mr. Shurl Curci to act and speak as though he represented all of them. Movants had approved a portion of the compromise through Mr. Shurl Curci, as shown by the Order filed on November 9, 1982. Thus, Movants are limited to a principal amount of $7,800,000.00.

An Order will be signed upon presentment.